IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action: 5:16-cv-227

| | |
|---|---|
| CHARLES J. ELLEDGE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LOWE'S HOME CENTERS, )<br>LLC, and LOWE'S )<br>COMPANIES, INC, )<br>)<br>Defendants. ) | COMPLAINT |

The plaintiff, Charles J. Elledge, complaining of defendants, alleges the following:

## JURISDICTION AND VENUE

1. Plaintiff has instituted this action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et seq.*, *as amended*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, to recover damages for the violations of his civil rights. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 29 U.S.C. § 626(c), and 28 U.S.C. § 1331.

2. Plaintiff resides in, the acts described herein occurred within, and defendants transact business in the Western District of North Carolina. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

**PARTIES**

3. The plaintiff, Charles J. Elledge, is a resident of Wilkes County, North Carolina. At all times pertinent to this action, the plaintiff was an "employee" of defendants within the meaning and definitions of the ADA, 42 U.S.C. § 12111(4), and the ADEA, 29 U.S.C. § 630(f).

4. The defendant, Lowe's Companies, Inc., is a corporation established pursuant to the laws of the State of North Carolina; and the defendant Lowe's Home Centers, LLC is a limited liability company established pursuant to the laws of the State of North Carolina. Both defendants are referred to hereafter, collectively, as "Lowe's" or "defendant." Defendant is a home improvement and appliance retailer based in North Carolina that engages in business throughout the United States. At all times pertinent to this action, defendant employed over 500 employees, and was the "employer" of plaintiff within the meaning and definitions of the ADA, 42 U.S.C. § 12111(5)(A), and the ADEA, 29 U.S.C. § 630(b).

2

## FACTS

### Background

5. Plaintiff was initially employed by defendant as a Health Care Analyst on August 4, 1993. From his initial employment, plaintiff attained periodic promotions until his promotion to Market Director of Stores (Market Director) in 2008.

### Plaintiff's Position

6. As Market Director, plaintiff supervised the managers and oversaw the operations of 12 Lowe's stores in Northwestern North Carolina.

7. In order to carry out his duties, plaintiff travelled to each store under his supervision within the territory of Northwestern North Carolina, to meet with management of the respective stores, review sales information, and advise them on how to enhance their sales and profits.

8. In order to carry out his job duties, plaintiff typically spent 1-2 hours per day traveling to and from the individual stores in his market, and 8-10 hours per day in the stores. While in the stores, plaintiff typically remained on his feet walking and standing much of the time.

9. Plaintiff excelled in his performance of his position of Market Director over the years.

10. Plaintiff's ability to manage the stores within his market, oversee the operations, maximize revenues, and supervise management was exceptional and resulted in significant profits for defendant. Plaintiff's market consistently ranked among the top markets in the country.

11. Over the years, plaintiff was commended repeatedly for his commitment and performance.

### Plaintiff's Disability

12. Plaintiff has a history of knee problems, primarily concerning his right knee. Specifically, plaintiff has undergone four knee surgeries, including two knee replacements, since 2010. On December 29, 2014, plaintiff underwent surgery to revise a total knee replacement that had been performed previously.

13. Following the surgery, plaintiff's physician required him to take leave from work through April 12, 2015, and plaintiff requested and was approved for leave by defendant under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*.

14. On April 13, 2015, plaintiff returned to work, under restrictions required by his physician. The restrictions consisted of an 8-hour workday (including travel), and a limitation of 4 hours of standing and walking. Defendant

4

approved plaintiff's return to work under the above conditions for a period of 60 days, which was subsequently extended to July 1, 2015.

15. From April 13, 2015 through June 30, 2015, plaintiff successfully fulfilled his duties, while attempting to adhere to the restrictions prescribed by his physician. Specifically, plaintiff continued to visit his 12 stores regularly, and continued to oversee operations and advise management. The stores under his supervision continued to thrive.

16. On July 1, 2015, plaintiff returned to see his physician, who, again, approved plaintiff's continuation of work, but emphasized that, based on plaintiff's representations of ongoing pain, plaintiff needed to adhere to the previously prescribed restrictions.

17. Plaintiff immediately conveyed his physician's restrictions and statement to defendant's Accommodation Team. The Accommodation Team approved the restrictions for six months from July 1, 2015 to January 1, 2016.

18. Plaintiff also provided his continued work restrictions to his direct manager, a vice president of defendant, and the regional Human Resources (HR) director (collectively, "plaintiff's managers").

19. In spite of the approval of plaintiff's continued work restrictions by defendant's Accommodation Team, approximately one week later, plaintiff's

direct manager informed him that they needed to have an "adult conversation" about his condition and how to move forward. The next week, plaintiff met with his manager and HR representative, and discussed the fact that, in performing his duties, plaintiff was encountering difficulty in adhering to his restrictions on walking and standing, which was causing severe pain in his knee, and affecting his medical healing process. Plaintiff suggested additional reasonable accommodations to enable him to abide by the restrictions, which his manager failed to consider.

20. At no point during the above conversation did plaintiff indicate that he was unable to perform his job duties. To the contrary, both plaintiff and his managers were well-aware that he was continuing to perform his job well, and that, other than his excessive walking and standing, he was not impaired in doing so.

21. However, the next week, while on vacation, plaintiff was directed to return to the Regional Office for continued discussions. Upon doing so, plaintiff's managers informed plaintiff that he was being removed from his position, and that he had 30 days to find a new job within the company ("30-day Ultimatum"). The managers failed to discuss potential reasonable accommodations. They warned plaintiff that if he did not agree to another position within the 30 days, his active

6

employment would end, and he would either be placed on long term disability (LTD) or terminated with a severance package.

22. Plaintiff, given no alternative, expressed his willingness to consider comparable positions, on the assurance from his managers that he would be "transitioned" into a comparable position without the standard posting and interview process.

23. At the conclusion of the meeting, plaintiff's managers asked him not to discuss or disclose their conversation, including the 30-day Ultimatum, to the Accommodation Team or any other managers.

24. Following the meeting of August 3, 2015, plaintiff's manager asked him to meet him alone at a local restaurant, and there, explained to plaintiff that he was sorry that he had imposed the 30-day Ultimatum, but that "HR told me what I had to do."

25. Given defendant's actions, through plaintiff's managers, plaintiff was severely distressed and in fear of losing his employment and livelihood with defendant.

26. The 30-day Ultimatum issued by plaintiff's managers was in direct conflict with the Accommodation Team's approval of plaintiff's restrictions and, upon information and belief, defendant's policies and standards. Upon information

and belief, plaintiff's managers failed to disclose to the Accommodation Team that they had imposed the 30-day Ultimatum.

27. In the meantime, plaintiff continued performing his job, as he always had, with commitment and excellence.

28. On August 12, 2015, plaintiff's managers convened a meeting with plaintiff and his team, and informed the team that plaintiff was being "transitioned" into a new position. Plaintiff's team members were shocked at the announcement of the removal of plaintiff from his position as Market Director, given that plaintiff was continuing to perform the essential functions of his job and did not appear to be impaired from doing so.

29. Thereafter, plaintiff was informed that he was being replaced in his position by an employee who was substantially younger and less qualified for the position.

30. Plaintiff was not "transitioned" into a comparable position by his managers, as promised in the August 3 meeting. When he questioned his HR manager as to why she had not effected the transition, she indicated that she was not authorized to do so, in spite of her representations at the time.

31. Nevertheless, plaintiff became aware of comparable positions that were open, and posted and applied for the jobs, all of which he was well-qualified for.

32. All such applications were denied, most without interviews, although plaintiff had superior qualifications and experience to the substantially younger individuals who were selected.

33. On or about September 11, 2015, plaintiff was finally removed from his position as Market Manager of Stores.

34. Up until the date of his removal, plaintiff continued to perform all of the essential functions of his job, while attempting to adhere to the restrictions prescribed by his physician. Specifically, plaintiff continued to visit his 12 stores regularly, and continued to oversee operations and advise management. The stores under his supervision continued to thrive.

35. With reasonable accommodations, plaintiff was, and still is, able to perform all of the essential functions of his position with Lowe's, as he did from April 13 to September 11, 2015.

36. Specifically, plaintiff's disability did not restrict his ability to manage the stores in his market, oversee the operations, and advise and consult with the management teams.

37. Despite that ability, defendant, through its managers, refused to consider reasonable accommodations to enable plaintiff to resume his work, and instead, took advantage of plaintiff's disability to remove him from his position, and insure that he would find no comparable position.

38. When plaintiff questioned his managers concerning their earlier representations at the August 3 meeting, they responded that the Accommodation Team had required them to issue the 30-day Ultimatum and have plaintiff removed from his position.

39. When plaintiff was not considered for another comparable position, his managers informed him that he would have to take leave on disability or termination with severance consisting of approximately 6-months salary. In addition, plaintiff was informed that substantial stock grants which he had earned during his employment with defendant would be forfeited if he was terminated at that time.

40. With no alternative, given plaintiff's responsibility as a single father to his young children, he requested a leave of absence on disability and applied for Long Term Disability (LTD) benefits on the ground that, although he was physically able to perform the essential functions of his job, he was removed from his position and denied reasonable accommodations by his managers.

10

41. Consequently, plaintiff was forced out of work on or about September 11, 2015, and has remained out of work since that date.

42. Following the approval of his extended leave, plaintiff continued to request reinstatement to his position and continued applying for comparable positions with the company, but his requests and applications were continuously denied and rejected.

43. On March 23, 2016, plaintiff applied for the position of Merchandising Director which was posted by Lowe's, a position for which plaintiff was well qualified. Again, plaintiff was rejected for the job, and, upon information and belief, an individual who was substantially younger, not disabled and less qualified was selected.

44. Defendant's actions herein were part of a pattern and practice of the company in pushing older and disabled employees out of their positions or out of their employment with the company.

## ADMINISTRATIVE REMEDIES

45. On or about November 16, 2015, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) in Charlotte, North Carolina. Plaintiff's charge alleged disability discrimination and age discrimination based on the above actions of defendant.

46. On August 8, 2016, plaintiff filed his amended and supplemental Charge of Discrimination, alleging disability and age discrimination, and retaliation against plaintiff for the filing of his initial charge in the denial to plaintiff of the position of Merchandising Director.

47. On September 29, 2016, EEOC issued notice of plaintiff's right to sue with respect to his charges against defendant.

48. Plaintiff has complied with all procedural prerequisites to filing this action.

## FIRST CLAIM FOR RELIEF
### Disability Discrimination in Violation of the ADA

49. Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

50. The ADA requires that a qualified individual with a disability be reasonably accommodated to enable him to perform the essential functions of his job in the absence of proof of some undue hardship.

51. At all times pertinent to this action, plaintiff was a qualified individual with a disability since he suffered from a physical disorder that substantially limited his major life activities of walking and standing.

12

52. Defendant, through its managers, wrongfully and intentionally discriminated against plaintiff because of his disability in violation of the ADA, on a continuing basis, as follows:

a. In failing to engage in a good-faith, reasonable, interactive process to determine reasonable accommodations to enable plaintiff to continue to work;

b. In denying plaintiff reasonable accommodations which would have enabled him to continue to work in his position as a Market Director;

c. In removing plaintiff from his position as Market Director of Stores;

d. In failing to consider reassignment of plaintiff to a comparable position; and

e. In denying his applications for the position of Merchandising Director.

53. As a proximate result of defendant's illegal acts of disability discrimination against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

54. Plaintiff is entitled to appropriate relief pursuant to the ADA, including compensatory damages and reasonable attorneys' fees and costs for his representation herein pursuant to 42 U.S.C. § 12117(a).

55. Defendant engaged in disability discrimination against the plaintiff with reckless indifference to his federally protected rights. Accordingly, plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(b).

## SECOND CLAIM FOR RELIEF
### Age Discrimination in Violation of the ADEA

56. Plaintiff hereby incorporates the foregoing paragraphs as if fully set out herein.

57. Plaintiff, born in 1954, was a member of the protected age class under the ADEA, and was, at the time of his removal from his position, consistently performing at a level higher than substantially younger employees who were similarly situated. Plaintiff was replaced by a substantially younger employee who was less qualified, and plaintiff was passed over for comparable positions by defendant who selected younger employees who were less qualified.

58. Defendant wrongfully and intentionally discriminated against plaintiff because of his age in violation of the ADEA, 29 U.S.C. § 621, as follows:

    a. In removing plaintiff from his position as Market Director of Stores;

b. In failing to consider reassignment of plaintiff to a comparable position; and

c. In denying his applications for the position of Merchandising Director.

59. As a proximate result of defendant's acts of age discrimination against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses, and is entitled to appropriate relief pursuant to the ADEA, including compensatory and liquidated damages, and reasonable attorneys' fees and costs for his representation herein pursuant to 29 U.S.C. § 626.

### THIRD CLAIM FOR RELIEF
### Retaliation in Violation of the ADA and ADEA

60. Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

61. As alleged above, plaintiff filed a Charge of Discrimination with EEOC on November 16, 2015, alleging disability and age discrimination in violation of the ADA and ADEA, respectively.

62. Defendant retaliated against plaintiff for filing his charge in violation of federal law, 42 U.S.C. § 12203(a), and 29 U.S.C. § 623(d), in denying his applications for the position of Merchandising Director, and upon information and

15

belief, other comparable positions which have become available since his filing of his charge.

63. As a proximate result of defendant's illegal acts of retaliation against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

64. Plaintiff is entitled to appropriate relief pursuant to the ADA and ADEA, including compensatory damages and reasonable attorneys' fees and costs for his representation herein, as set forth above.

## PRAYER FOR RELIEF

The plaintiff hereby requests the following relief:

A. That plaintiff be reinstated to his position with defendant;

B. That plaintiff recover of defendant back pay and restoration of all benefits;

C. That plaintiff recover of defendant compensatory damages in an amount in excess of $100,000;

D. That plaintiff recover of defendant liquidated damages pursuant to 29 U.S.C. § 626;

E. That plaintiff recover of defendant punitive damages in an amount to be determined by the jury;

F. That plaintiff recover the costs of this action, including reasonable attorneys' fees for his representation herein, as required by 42 U.S.C. §12117(a) and 29 U.S.C. § 626;

G. That plaintiff recover pre-judgment and post-judgment interest on all damages awarded herein; and

H. That this Court grant such other relief deemed just and appropriate.

## Request for Jury Trial

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues presented herein.

This the 27th day of December, 2016.

/s/Robert M. Elliot
Robert M. Elliot (7709)
R. Michael Elliot (42806)
Attorneys for Plaintiff
Elliot Morgan Parsonage, PLLC
426 Old Salem Road
Winston-Salem, NC 27101
(336) 724-2828
rmelliot@emplawfirm.com
michaelelliot@emplawfirm.com